```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EMERSON ELECTRIC CO.,                                          MEMORANDUM AND ORDER

                    Plaintiff,                                 08-CV-1489 (DRH)(AYS)

        -against-                                              (Wexler, J.)

ASSET MANAGEMENT ASSOCIATES
OF NEW YORK, INC.,

                    Defendant.
----------------------------------------------------------X
```

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★   JUL 28 2015   ★
LONG ISLAND OFFICE

APPEARANCES:

SIMON LESSER P.C.
BY: Leonard F. Lesser, Esq.
Attorneys for Plaintiff
420 Lexington Avenue
New York, New York 10170

JONATHAN D. BROWN, P.C.
BY: Jonathan D. Brown, Esq.
Attorneys for Defendant
737 Roanoke Avenue
Riverhead, New York 11901

WEXLER, District Judge

This is a breach of contract action arising from an agreement between plaintiff Emerson Electric Co. ("Emerson" or "Plaintiff") and defendant Asset Management Associates of New York, Inc. ("AMA" or "Defendant"). The Court previously granted summary judgment to Plaintiff on its breach of contract claim for unpaid invoices and directed a trial to determine the amount of damages and for reasonable attorneys' fees. See ECF Docket 57; Emerson Elec. Co. v. Asset Mgmt. Assocs., 08-CV-1489, 2012 WL 976051, at *7, 9 (E.D.N.Y. Mar. 20, 2012).

Plaintiff seeks a judgment against Defendant in the amount of $1,120,678.80, plus pre-

-1-

judgment interest in the amount of $321,909.89 through May 10, 2013 based on the terms of the contract, and additional pre-judgment interest at the rate of $159.68 per day until the date of entry of judgment.[1] Defendant concedes that unpaid invoices amount to $1,058,771.50, but asserts it is entitled to a credit for various overcharges in the amount of $490,552. Thus, Defendant urges that Plaintiff is entitled to a judgment in the amount of $568,219.50.

Following a bench trial before this Court, and having considered the parties' post-trial submissions, the Court makes the following findings of fact and conclusions of law on the damages due Plaintiff.[2]

## FINDINGS OF FACT

I. The Parties and Their Business Relationship

1. Plaintiff, Emerson Electric Co. ("Plaintiff" or "Emerson"), is a Missouri corporation with its principal place of business located in the State of Missouri. See ECF Docket 57; Emerson, 2012 WL 976051, at *1.

2. Defendant, Asset Management Associates of New York, Inc. ("Defendant" or "AMA"), is a New York corporation with its principal place of business located in Southampton, New York. Id.

3. The parties executed a Transition Services Agreement ("TSA") in connection with AMA's purchase of two Emerson affiliates that were later renamed CSI Technologies, Inc. ("CSI"). Id. at 1-2. Pursuant to the TSA, Emerson agreed to provide manufacturing and support operations for the purchased businesses for

---

[1] This sum is comprised of $1,165,613.80 in unpaid invoices, minus an agreed credit of $44,935.00.

[2] By Order dated March 14, 2014, Plaintiff's motion for $391,762.47 in attorneys' fees was granted. See ECF Docket 73.

one year, and AMA agreed to reimburse Emerson for those services. Id. The TSA also stipulated to AMA's continued use of Emerson's manufacturing facility in Mexico until AMA could establish its own facility in Mexico. Id. AMA eventually stopped reimbursing Emerson for its expenses at the Mexican facility, resulting in Emerson bringing this suit for breach of contract. Id. at 2-3.

4. The Court granted summary judgment on Emerson's breach of contract claim and directed a trial to be held on damages and reasonable attorneys' fees. See ECF Docket 57; Emerson, 2012 WL 976051, at *7, 9.

## II. The Unpaid Invoices

5. AMA did not pay the invoices submitted to it by Emerson for the months of August 2007, September 2007, October 2007, November 2007, December 2007, January 2008, February 2008, and March 2008. Patrick Cerroni, General Manager of Emerson's Mexican facility ("Ceroni"), testified that the unpaid invoices were for services rendered and expenses paid by Emerson, and which were not paid by AMA as required under the TSA. Trial Transcript ("T. Tr.") 69:8-22.

6. The Court finds the following invoices were billed by Emerson and yet not paid by AMA:

TSA Schedule A Invoices

| | | |
|---|---|---|
| August 2007 Invoice (Exhibit 30) | Fiber | $161,961 |
| | Copper | $218,428 |
| September 2007 Invoice (Exhibit 31) | Fiber | $158,799 |
| | Copper | $245,314 |

| October 2007 Invoice (Exhibit 32) | Fiber | $64,055 |
| | Copper | $215,359 |
| November 2007 Invoice (Exhibit 33) | Fiber | $4,316 |
| | Copper | $15,050 |
| December 2007 Invoice (Exhibit 34) | Fiber | $1,882 |
| | Copper | $5,604 |
| January 2008 Invoice (Exhibit 34) | Fiber | $-83 |
| | Copper | $22,973 |
| February 2008 Invoice (Exhibit 34) | Copper | $13,022 |
| | | **Total: $1,126,680** |

7. <u>TSA Schedule B Invoices</u>

| August 2007 Invoice (Exhibit 35) | Fiber | $2,542.78 |
| | Copper | $6,087.07 |
| September 2007 Invoice (Exhibit 35) | Fiber | $134.66 |
| | Copper | $7,547.36 |
| October 2007 Invoice (Exhibit 35) | Fiber | $5,061.60 |
| | Copper | $10,713.09 |
| November 2007 Invoice (Exhibit 35) | Copper | $4,556.55 |
| December 2007 Invoice (Exhibit 35) | Copper | $580.68 |
| January 2008 Invoice (Exhibit 35) | Copper | $581.41 |
| March 2008 Invoice (Exhibit 35) | Copper | $1,128.69 |
| | | **Total: $38,933.89** |

**Total Due under Schedule A and Schedule B Invoices:** **$1,165,613.89**

8. The parties agree that AMA is entitled to a credit of $44,935.58. See Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Pl. Mem."), at 3; Defendant's Proposed findings of Fact and Conclusions of Law ("Def. Mem."), ¶ 7. The balance between the unpaid invoices and the agreed credit is **$1,120,678.31**.

III. The Offsets Claimed by Defendant

Defendant AMA claims it is entitled to various offsets for items it paid but for which it should not have been charged in the amount of $490,552 for the following items:

A. $72,000 for Pension and Severance Costs

9. John Helenek, CSI's Chief Financial Officer ("Helenek") testified that AMA is entitled to an offset of $72,000 for pension and severance expenses paid for terminated employees. (T. Tr. 90:12-92:16; 95:5). The TSA dictates that severance costs associated with termination of Mexican employees is AMA's responsibility. (T. Tr. 125:7-25). The invoice was paid in full by AMA without any protest to Emerson. Plaintiff asserts that the severance expenses were for AMA employees terminated in April 2007. (Tr. T. 47:20-22; 125:7-28).

B. $21,000 for Computer Usage

10. AMA argues it is entitled to an offset in the amount of $21,000 because it was charged for 124 computers, but only used 40 computers. (T. Tr. 126:17-23; T. Tr. 95:16). The TSA provides in Schedule B, note 3 that "[a]ll service termination [for information technology charges] requires 60 days of advance notice." AMA did not provide Emerson the written notice to reduce the computer charges as required by the TSA. (T. Tr. 126:24-127:2).

## C. $70,000 for Headcount Allocations

11. Helenek testified that Emerson overcharged AMA for the number of employees in the allocation pool. (T. Tr. 96:16-21). Section § 3(b) of the TSA states that headcount allocations are based on projections for the entire fiscal year and that the headcount numbers may not be changed. (T. Tr. 36:16-37). Furthermore, AMA never sent any writing to Emerson regarding a proposed reduction of the projected headcount. (T. Tr. 117:22-118:9; 118:14-119:20).

## D. $18,420 for Employee Keqin Huang

12. Helenek testified that Emerson billed AMA for the salary of Keqin Huang when she did not do any work for AMA. (T. Tr. 98:17-100:2). However, Schedule 1.B of the Acquisition Agreement specifically lists Keqin Huang as post-acquisition AMA employee. AMA never sent Emerson any written notification disputing this charge. (T. Tr. 145:17-24).

## E. $309,132 for Customs and Duties Charges

13. AMA alleges that Emerson overcharged for customs and duties charges when Emerson changed the tax markup from 5 percent to 6.5 percent on the August 2007 invoice. (T. Tr. 100:8-101:16; 88:25-89:1). In its post-trial submissions, AMA asserts the overcharge amounts to $309,139, which is comprised of $249.995 and $59,177. See Def. Mem., ¶ 14.

14. Cerroni testified that § 3(c) of the TSA states that the tax rate was subject to an upward adjustment to cover the statutory requirements under Mexican law. AMA was notified of the tax rate change in August of 2007 and never objected to the change in tax rate. (T. Tr. 75:3-25; 76:2-11; 74:4-20). Evidence reflects that

Emerson's shelter paid at least the 6.5 percent rate. (T. Tr. 71:11-24).

III. Emerson is Entitled to $321,909.98 in Pre-Judgment Interest

15. The TSA states in §1(d) that Emerson is entitled to 5% pre-judgment interest if AMA does not pay any invoice within five days of when it was due. Emerson claims it is owed $321,909.98 for the interest accrued on the unpaid TSA invoices, as reflected in Exhibit B to Pl. Mem.

## CONCLUSIONS OF LAW

I. Emerson's Damages

16. The only issue before the Court is the proper award of damages. Damages for breach of contract are compensatory and intended to place the plaintiff in the same economic position it would have been had the breaching party performed the contract. See Village of Ilion v. County of Herkimer, 23 N.Y.3d 812, 822-23 (2014).

17. "Damages which may be recovered by a party for breach of contract are restricted to those damages which were reasonably foreseen or contemplated by the parties during their negotiations or at the time the contract was executed." Kenford Co. v. County of Erie., 73 N.Y.2d 312, 321 (1989). "Plaintiff has the burden of establishing damages...with reasonable certainty, such as by submitting...relevant documentation." Craig Test Boring Co., Inc. v. Saudi Arabian Airlines Corp., 138 F. Supp. 2d 553, 560 (S.D.N.Y. 2001).

18. The evidence shows that the unpaid TSA invoices for August 2007, September 2007, October 2007, November 2007, December 2007, January 2008, February 2008, and March 2008 were for services rendered by Emerson for AMA pursuant

to the TSA. Emerson is entitled to the balance of $1,120,678.31 owed on the unpaid invoices.

19. Pursuant to §1(d) of the TSA, Emerson is entitled to 5% prejudgment interest on unpaid invoices, which amounts to $321,909.98.

III. AMA's Claimed Offsets

20. The burden is on AMA to prove its claimed offsets by a preponderance of the evidence. 3801 Beach Channel, Inc. v. Shvartzman, 2010 WL 6471990, at *13, fn. 11 (E.D.N.Y. Sept. 30, 2010).

21. The TSA obligates AMA to pay employee severance costs for terminated employees. The evidence indicates that these costs were affiliated with certain AMA employees who were terminated in April 2007, and AMA never objected to the charge. The Court finds that AMA has failed to satisfy its burden of proving entitlement to an offset, and therefore its claim for an offset in the amount of $72,000 is denied.

22. AMA claims entitlement to a offset of $21,000 for over-billed computer usage. Schedule B note 3 of the TSA requires 60 day advance notice to terminate technology services. The evidence reflects that no such notice was provided. Therefore, AMA's claim for a offset in the amount of $21,000 is denied.

23. AMA also claims it is entitled to a set-off in the amount of $70,000 for headcount allocations. The TSA states that the headcount allocation is fixed for the entire fiscal year. AMA never sent written notification to reduce the headcount projections as required under the TSA. Nor did AMA provide any evidence that indicated that Emerson overcharged for the headcount allocation. Therefore,

AMA's claim for a $70,000 set-off is denied.

24. AMA claims a offset of $18,420 for employee Keqin Huang's salary. The Acquisition Agreement specifically lists Keqin Huang as an AMA employee, to which AMA never objected. AMA's claim for a offset in the amount of $18,420 is denied.

25. AMA also claims a offset of $309,132 for over-billing on customs and duties charges. The TSA states under §3(c) that the tax rate may be subject to an upward adjustment to cover the statutory requirements under Mexican law. AMA was informed of the rate adjustments and never objected. Furthermore, the evidence indicates that Emerson did pay the tax rate adjustment, a point contended by AMA at the trial. AMA's claim for this offset in the amount of $309,132 is denied.

26. The Court finds that AMA did not satisfy its burden of proving any of the claimed offsets by a preponderance of the evidence. Emerson is entitled to damages in the amount of $1,120,678.31, plus 5% contractual pre-judgment interest pursuant to §1(d) of the TSA, in the amount of $321,909.99 through May 10, 2013; plus $159.68 in additional per diem interest from May 11, 2013 through the date of entry of Judgment.

## CONCLUSION

For the reasons stated above, the Court directs the Clerk to enter judgment against Defendant AMA in the amount of $1,442,588.20, plus daily interest in the amount of $159.68 from May 10, 2013 through the date judgment is entered.

SO ORDERED.

s/ Leonard D.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
July 28 2015